```
1   JASON M. FRIERSON
    United States Attorney
2   District of Nevada
    Nevada Bar Number 7709
3   ROBERT KNIEF
    Assistant United States Attorney
4   501 Las Vegas Boulevard South, Suite 1100
    Las Vegas, Nevada 89101
5   Tel: (702) 388-6336
    Robert.Knief@usdoj.gov
6   Attorneys for the United States
```

FILED
JAN 24 2024
US DISTRICT COURT
DISTRICT OF NEVADA

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:24-mj-00079-NJK |
| Plaintiff, | **COMPLAINT** |
| vs. | VIOLATION: |
| JULIO ALVAREZ LOPEZ, | Count One |
| Defendant. | 18 U.S.C. § 113(a)(3) and 49 U.S.C. § 46506 - Assault with a Dangerous Weapon |

BEFORE the United States Magistrate Judge, Las Vegas, Nevada, the undersigned Complainant, being duly sworn, deposes and states:

**COUNT ONE**
*(Assault with a Dangerous Weapon)*

On or about January 24, 2024, in the Special Aircraft Jurisdiction of the United States,

JULIO ALVAREZ LOPEZ,

defendant herein, did assault C.R. with a dangerous weapon with the intent to do bodily harm, all in violation of Title 18, United States Code, Section 113(a)(3) and Title 49 United States Code, Section 46506.

I, Anthony L. Needler, Special Agent with the Federal Bureau of Investigation, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I have been a Special Agent with the Federal Bureau of Investigation (FBI) since February 2020, and in that time, I have worked on the FBI Portland Joint Terrorism Task Force, FBI Delaware Joint Terrorism Task Force, the FBI Washington Field Office – Capitol Conspiracy Team, and the FBI Las Vegas Joint Terrorism Task Force, where I am currently assigned. During my tenure with the FBI, I have gained experience investigating federal criminal violations including international and domestic terrorism, seditious conspiracy, civil disorder, drug trafficking, violent crimes against children, and money laundering. As one of my duties, I am trained as an airport liaison agent and have experience in investigating federal criminal violations occurring in the special maritime jurisdiction of the United States. Among other things, I have reviewed records, conducted or participated in surveillance, written and executed search/arrest warrants, reviewed surveillance footage, and monitored phone conversations. Prior to being employed with the FBI, I was a United States Army Officer and investigated violations of the Uniform Code of Military Justice. My training includes courses at the FBI Academy Basic Field Training at Quantico and courses on the Uniform Code of Military Justice at Fort Leonard Wood. I am a federal law enforcement officer within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant.

2. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, witnesses, and agencies. This affidavit is intended to show merely that there is sufficient probable cause for the requested

2

1 warrant.  It does not set forth all of my knowledge, or the knowledge of others, about this
2 matter.
3     3.    Based on my training and experience and the facts as set forth in this
4 affidavit, there is probable cause to believe that violations of: 18 U.S.C. § 113(a)(3) and 49
5 U.S.C. § 46506 (Assault with a dangerous weapon).
6     4.    On January 24, 2024, Alaska Airlines Flight 604 departed Seattle-Tacoma
7 International Airport in SeaTac, Washington, enroute to Harry Reid International Airport
8 in Las Vegas, NV at approximately 6:10 a.m.
9     5.    During the flight, Witness 1 was seated next to defendant JULIO
10 ALVAREZ LOPEZ. Witness 1 noted that the Defendant was "fidgety" during the flight.
11 The defendant kept putting his gloves on and off and getting up into his backpack.  The
12 witness stated the defendant would not make eye contact with her.
13     6.    Upon initial descent into Las Vegas (approximately 30 minutes before
14 landing), the defendant got up from his seat and then sat back down, then immediately got
15 up again.  After he stood up the second time, the defendant went to the bathroom.  The
16 witness stated the defendant was gone for a while.  Upon returning from the bathroom, the
17 defendant began punching and hitting the victim, C. R.  C.R. was seated across the aisle
18 from the defendant.  During the altercation, the C.R.'s wife was screaming at the
19 defendant to stop hitting her husband.  Witness 1 unbuckled her seatbelt and yelled at the
20 defendant to stop.  At that time, C.R. had stood up.  Witness 1 stated there was blood
21 everywhere.  Witness 1 saw the defendant drop something, which appeared to be a pen and
22 tape bundle.  The defendant then started moving up the aisle towards the front of the
23 aircraft.  As the defendant moved up the aisle, he was screaming "I'll only talk to the FBI."
24

The defendant was described by Witness 1 as wearing jeans, dark navy gloves, and a dark jacket.

7. C.R.'s wife was struck during the altercation as she shielded her son, who was approximately 7 years of age.

Photo: Pen bundle used by the defendant

8. As the defendant moved towards the front of the aircraft, C.R., a sworn law enforcement officer, ordered the defendant to sit down. The defendant did take an empty seat. At that time, the flight crew worked to provide flex cuffs and the defendant was restrained for the remainder of the flight. Alaska flight 604 landed at Harry Reid International Airport in Las Vegas, Nevada, at approximately 8:37 a.m.

9. The defendant was taken into custody by the Metropolitan Police Department (LVMPD) and held at the police substation in Terminal 3 at Harry Reid International Airport.

10. On January 24, 2024, the Task Force Officers of the FBI from the Federal Air Marshals (FAMs) Service mirandized the defendant in the LVMPD substation located in Terminal 3. The defendant was willing to talk with the FAMs, but really wanted to speak with the FBI. The Federal Air Marshals Service attempted an interview, during the interview, the defendant stated he was seeking asylum in the United States. The defendant felt the Mafia had been chasing him the last few months. The defendant admitted to never seeing C.R. before but planned on killing C.R. The defendant armed himself with pens wrapped in rubber bands. The defendant stated, "I planned on attacking and killing him."

11. On January 24, 2024, at approximately 9:46 a.m., the defendant was interviewed at the LVMPD substation located in Terminal 3 by the responding FBI agents. During the interview, the defendant admitted to FBI agents that he intended to kill C.R.

and had created the weapon he used.  The weapon was a made by bundling pens with rubber bands (reference below picture).



12.     During the interview, the defendant admitted to making the weapon before the flight.  He saw C.R. on the flight and thought C.R. was following him.  The defendant believed C.R. was the Cartel and the defendant was trying to get C.R. to stop following

him. During the interview, the defendant admitted to the FBI agents that he was trying to stab C.R. in the eye to reach C.R.'s brain to kill him.

13. Your affiant observed significant injuries around the eye of C.R.. Pictures of C.R. are below.

Picture 1 of C.R.



6



14. On January 24, 2024, a task force officer with the Southern Nevada Counterterrorism Center interviewed Witness 2. Witness 2 stated that he had removed his headphones and was awaiting arrival in Las Vegas, when he heard yelling and what he

described as a commotion several rows behind him. Witness 2 stated he stood up from his seat and saw an approximately 40 year old male adult, with gray/white hair tied in a bun on the top of his head, wearing a sweatshirt and dark pants stabbing another passenger with an unknown object. After the defendant stopped stabbing the other passenger, the defendant began walking towards the front of the aircraft. While the defendant was walking towards the front of the aircraft, Witness 2 observed the defendant drop the item in which the defendant was stabbing the victim. Witness 2 described the weapon used as several pens wrapped together. The defendant passed the row of Witness 2 and took an empty seat a few rows in front of Witness 2. The defendant was the restrained by the wrists for the remainder fo the flight.

15. Your affiant submits there is also probable cause to believe that defendant, JULIO ALVAREZ LOPEZ, violated 18 U.S.C. § 113(a)(3) and 49 U.S.C. § 46506 which makes it a crime to assault another with a dangerous weapon, with intent to do bodily harm.

ANTHONY L. NEEDLER
SPECIAL AGENT, FBI

SUBSCRIBED and SWORN to before me this _24th_ day of January 2024.

NANCY J. KOPPE
U.S. MAGISTRATE JUDGE

8